PEOPLE v PRATHER

Docket No. 66254. Submitted August 19, 1982, at Lansing.—Decided October 15, 1982.

Louis S. Prather was jointly tried with Kenneth Trusel in Recorder's Court of Detroit, Joseph A. Gillis, J. Prather was charged with felonious assault and felony-firearm, while Trusel was charged with second-degree murder, assault with intent to murder, and felony-firearm. Prather was convicted of felonious assault and felony-firearm; Trusel was convicted of two counts of felonious assault and felony-firearm. Both defendants appealed. The Court of Appeals affirmed the convictions in an unpublished per curiam opinion. Docket Nos. 53228, 53325, decided December 4, 1981. Prather sought leave to appeal to the Supreme Court. The Supreme Court remanded to the Court of Appeals "for explication of the reasons for decision of those issues not addressed in its opinion of December 4, 1981". 414 Mich 887 (1981). *Held:*

1. Since an unloaded gun is a firearm within the meaning of the felony-firearm statute, the jury was properly charged that Prather could be convicted of felony-firearm even if the gun he held was not loaded.

2. As a general rule, an unloaded gun is a dangerous weapon within the meaning of the felonious assault statute. It was not error to charge the jury that it was not necessary to find that the gun which Prather used was loaded in order to convict him of felonious assault.

3. Since the type of firearm used by Prather is a type of weapon enumerated in the felonious assault statute and there was no proof that the pistol was incapable of firing a projectile,

Rᴇғᴇʀᴇɴᴄᴇs ғᴏʀ Pᴏɪɴᴛs ɪɴ Hᴇᴀᴅɴᴏᴛᴇs

[1] 79 Am Jur Weapons and Firearms § 3.
Fact that gun was unloaded as affecting criminal responsibility. 79 ALR2d 1412.
[2] 6 Am Jur 2d, Assault and Battery § 34.
[3] 6 Am Jur 2d, Assault and Battery § 94.
[4] 6 Am Jur 2d, Assault and Battery § 69.
[5] 5 Am Jur 2d, Appeal and Error § 891.
[6] 41 Am Jur 2d, Indictments and Informations § 201.

the prosecution did not have the burden of showing that the gun was operable at the time of its use by Prather.

4. The question of whether Prather acted in self-defense was a question for the jury. The proofs at trial were sufficient to support the jury's determination that Prather was guilty of felonious assault and felony-firearm.

5. Even if the trial court's instructions as to whether the jury could convict if Prather's assault was directed to individuals other than the person named in the information were ambiguous and confusing, no error occurred since there was no objection to the instructions as given and the trial court could have properly amended the information so as to include those who were with the person named in the information. Such amendment would have in no way prejudiced Prather's defense of self-defense.

6. The jury's finding that Prather was guilty as charged of felonious assault and felony-firearm while finding Trusel guilty of felonious assault and felony-firearm rather than the charged crimes of murder and assault with intent to murder in no way resulted in inconsistent verdicts.

Affirmed.

1. Criminal Law — Felony-Firearm — Statutes.

An unloaded gun may be a firearm within the meaning of the felony-firearm statute (MCL 750.227b; MSA 28.424[2]).

2. Criminal Law — Felonious Assault — Firearms — Statutes.

An unloaded gun, as a general rule, is a dangerous weapon for the purposes of the felonious assault statute; it is not error to instruct a jury that it is not necessary to find that a gun used in an assault was loaded in order to find the defendant guilty of felonious assault (MCL 750.82; MSA 28.277).

3. Criminal Law — Felonious Assault.

The prosecution need not present proof that a gun used in an assault was operable in order to establish a prima facie case on a felonious assault charge where the weapon used is one of the weapons enumerated in the felonious assault statute (MCL 750.82; MSA 28.277).

4. Criminal Law — Burden of Proof — Self-Defense.

The burden of proof is on the prosecution to show beyond a reasonable doubt that a defendant did not act in self-defense where the defendant asserts a claim of self-defense; the question of whether an accused acted in self-defense is a question of fact for the jury to determine.

5. Criminal Law — Jury Instructions — Preserving Questions.

    Failure to object to a trial court's instruction to the jury waives any claim of error on appeal unless the appellate court finds that the instructions resulted in a miscarriage of justice.

6. Criminal Law — Informations — Amendment of Informations — Courts.

    A trial court, generally, may allow an amendment to a criminal information at any time; the trial court's exercise of its discretion in permitting amendment to an information will not be overturned on appeal in the absence of a showing that the defendant was prejudiced in his defense or a failure of justice resulted.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Janice M. Joyce Bartee,* Assistant Prosecuting Attorney, for the people.

*George Stone,* for defendant on appeal.

Before: V. J. Brennan, P.J., and N. J. Kaufman and R. M. Maher, JJ.

Per Curiam. By order, the Supreme Court remanded this case to us "for explication of the reasons for decision of those issues not addressed in its opinion of December 4, 1981". Our first opinion involved both defendant Prather and defendant Trusel. This opinion concerns only defendant Prather.

This case arose out of a shooting incident which occurred in the late evening hours of March 10, 1980, at a motel located in the City of Detroit. Defendant Prather and codefendant Trusel, with a female friend, Miriam Royals, occupied a room close to a room where a group of teenagers were celebrating the return of a friend who was home on leave from the Navy. The teenagers were using

alcohol and drugs and defendants had been drinking. Following an altercation which initially occurred outside of the room, one teenager died as a result of a bullet which entered his left side, passed through his heart and came to rest in his right lung. Another teenager suffered a bullet wound to the shoulder.

The defendants alleged that they acted in self-defense, contending that Trusel was innocently walking towards his motel room minding his own business when the youths, motivated by racism, initiated a fight with them. Only after Trusel was punched in the nose, was hit by a beer bottle and fired "warning" shots, was Trusel obligated to shoot to defend himself and Prather obligated to wave his gun around to ward off their attackers.

The teenagers contended that they were not the aggressors. Although admitting somewhat unruly behavior, they consistently denied that they initiated any conversation with the defendants, denied being the aggressors in the confrontation, and stated that they did not throw any beer bottles until after Trusel shot Bazey, one of the teenagers. They contended that any misbehavior on their part was a normal reaction to having a gun pulled on them and seeing two of their friends being shot.

Defendant raises six issues. The first issue we will consider is whether an unloaded gun, which is not shown to have the capacity of being fired if loaded, constitutes a firearm within the meaning of the felony-firearm statute, MCL 750.227b; MSA 28.424(2).

All of the witnesses, including the defendant, testified that the defendant went to the trunk of the car, took out a pistol and waved it around. It was disputed whether the defendant pointed the gun at anyone in particular, at the group as a

whole, or pointed it at all. However, it was not seriously disputed that the gun was not loaded. The defendant testified that when he took the gun, a .38 caliber, out of the trunk he "dumped the chamber" onto the parking lot. Six .38 caliber shells were found in the parking lot. The defendant did not know if the gun would have fired because he had never tried to fire it. The gun was never recovered.

For the reasons stated in *People v Jackson,* 108 Mich App 346, 350-351; 310 NW2d 238 (1981), we find that under the circumstances of this case the gun constituted a firearm within the meaning of the felony-firearm statute:

"The general rule is that the prosecutor need not present proof of operability as an element of a prima facie case in a felony-firearm prosecution. *People v Stephenson,* 94 Mich App 300; 288 NW2d 364 (1979), *People v Gibson,* 94 Mich App 172; 288 NW2d 366 (1979). As the *Gibson* Court stated:

" 'The Supreme Court has found that the legislative purpose behind the felony-firearm statute is to deter the use of firearms due to their inherent dangerousness. *Wayne County Prosecutor [v Recorder's Court Judge,* 406 Mich 374; 280 NW2d 793 (1979)].* Therefore, the felony-firearm statute requires a construction in harmony with that finding, MCL 8.3; MSA 2.212.

" 'It is our opinion that the prosecutor need not present proof of operability as an element of a prima facie case in a felony-firearm prosecution. A contrary requirement would be inconsistent with the legislative intent of discouraging the practice of carrying guns in circumstances where harm is apt to occur.' *Id.,* 177.

"This rule was recently reaffirmed in *People v Mason,* 96 Mich App 47, 51; 292 NW2d 480 (1980), where the Court stated:

" 'We agree with the position taken in *People v Gibson,* 94 Mich App 172; 288 NW2d 366 (1979), that the prosecutor need not present proof of operability as

an element of the prima facie case in a felony-firearm prosecution. To hold otherwise could prevent prosecution under the statute in cases where the weapon is not recovered, even though the victim testifies to its existence. Additionally, as was noted in *Gibson,* "[a] contrary requirement would be inconsistent with the legislative intent of discouraging the practice of carrying guns in circumstances where harm is apt to occur'. *People v Gibson, supra,* 177.' "

Also, see *People v Berberick,* 105 Mich App 421; 306 NW2d 536 (1981), and *People v Boswell,* 95 Mich App 405; 291 NW2d 57 (1980).

Defendant also claims that an unloaded gun, which is not shown to have the capacity of being fired if loaded, is not a dangerous weapon within the meaning of the felonious assault statute, MCL 750.82; MSA 28.277.

The trial court instructed the jury that it was immaterial for purposes of felonious assault that the pistol was unloaded. No objection was made to the instruction.

We find that defendant's claim lacks merit because it is the general rule that an unloaded gun is a dangerous weapon for purposes of the felonious assault statute. *People v Doud,* 223 Mich 120; 193 NW 884 (1923), *People v Williams,* 6 Mich App 412; 149 NW2d 245 (1967). There was no error on the part of the trial court in instructing the jury that it was not necessary to find that the gun was loaded. *Williams, supra.* Also, see CJI 17:4:06; MCL 750.222; MSA 28.419, MCL 28.421; MSA 28.91. Further, we find that the prosecutor need not present proof of operability as an element of a prima facie case in a felonious assault prosecution.

Defendant's reliance on *People v Stevens,* 409 Mich 564; 297 NW2d 120 (1980), is misplaced. In that case, the parties stipulated that the weapon

involved, a starter pistol, was mechanically defective to the point where it was incapable of firing. The Supreme Court held that since the pistol was not capable of propelling a dangerous projectile, because of the very nature of a starter pistol, it was not a gun, revolver, or pistol within the meaning of the felonious assault statute. In the instant case, there was no stipulation. The defendant testified that he did not know if the gun would fire because he had never fired it. The operability of the gun could not be established at trial because the gun was never retrieved. However, unlike the starter pistol in *Stevens,* a .38 caliber gun is one of the weapons enumerated in the felonious assault statute and is capable of propelling a dangerous projectile. MCL 8.3t; MSA 2.212(20). Therefore, we find that *Stevens* is distinguishable on its facts.

Defendant's third claim is that there was insufficient evidence to prove beyond a reasonable doubt that defendant did in fact commit a felonious assault. Further, defendant claims that there was insufficient evidence to prove beyond a reasonable doubt that defendant did not act in self-defense or in defense of his friend, codefendant Trusel.

Due process requires that the prosecutor introduce sufficient evidence which could justify a trier of fact in reasonably concluding that the defendant is guilty beyond a reasonable doubt. *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979). When the defendant asserts a claim of self-defense, the burden is on the prosecution to show beyond a reasonable doubt that the defendant did not act in self-defense. *People v Jackson,* 390 Mich 621, 626; 212 NW2d 918 (1973). Whether or not the accused acted in self-defense is a question of fact for the jury to determine. *People v Vail,* 49 Mich App 578, 592; 212 NW2d 268 (1973), *rev'd on other grounds* 393 Mich 460; 237 NW2d 535 (1975).

Ronald Szuch testified that he and two people named Geist and Bain were standing outside of the motel room door when defendant Prather, and codefendant Trusel and their female friend, Royals, walked up to them. Trusel suggested that they "trade ladies". When Trusel would not drop the subject, the conversation got heated and Geist told Trusel and Prather to leave. Trusel replied, "If everybody doesn't get back, you are all going to get hurt." Trusel then stepped back a couple of feet, pulled out a gun and shot once into the air. After lowering the gun, Trusel then shot Bazey, another member of the teenagers' group, in the arm. Trusel, Prather, and Royals retreated back into their motel room. Bazey took off running. Szuch testified that, because they really did not know that Bazey had been shot at that time, they then threw beer bottles at the door of the motel room to induce Prather and Trusel to come back out and fight. When Trusel cracked the motel room door open, Geist threw a beer bottle which hit Trusel in the face. Trusel closed the door, reopened it approximately 20 seconds later and started shooting. Geist, about five or six feet away, was shot. Geist ran approximately 25 feet before falling. Geist had a beer bottle in his hand at the time he was shot and had stepped back and put his hands up just before he was shot. Geist died from the wound. Ms. Royals was in the background saying "shoot those honkies".

Szuch also testified that after Geist was shot, Prather ran out to the trunk of the car and got a gun. He then pointed it at "everybody, telling them to stay back". Trusel and Royals then came out, Trusel holding his weapon, and the trio got into their car and left.

Prather testified that he was sitting in the car

when he saw Trusel with four or five fellows standing "menacingly" around him. He went to the trunk of the car, got a pistol out, and emptied the bullets from it. He then waved it around and told everyone to get back and to leave Trusel alone. Trusel went to the room and Prather went to the car. Trusel and Royals then came out and the group left. Prather denied ever pointing a gun at anyone.

From the testimony, the jury could believe that the defendant did not act in self-defense but was an aggressor in bringing about the conflict, that there were avenues of retreat open to him, and that there were other ways of repelling the alleged attack. Further, the evidence established that the defendant pointed the gun, telling everyone to stay back. We find that this evidence was sufficient to support defendant's convictions for felonious assault and felony-firearm.

Next, defendant claims that the trial court's supplemental instructions to the jury were confusing and prejudicial to the defendant.

The original complaint and information proceeded on the theory that the victim of Prather's felonious assault was Ronald Szuch, who was one of the major participants along with Geist and Bazey. However, the subsequent trial testimony revealed that Prather pointed or waved his gun not only toward Szuch but towards the other members of the group. The prosecutor did not move to amend the information at any time during or after trial. See MCL 767.76; MSA 28.1016.

The trial court initially instructed the jury that Prather's felonious assault referred to Ronald Szuch. During the court's first and second supplemental instructions, the court did not reinstruct as to who was the "victim" of Prather's felonious

assault. During the court's third supplemental instruction on felonious assault, the transcript reveals the following colloquy:

"*The Court:* All right. The question I have from your foreman is to please clarify the charges in count three. *Does the charge in count three against Mr. Prather apply only to Mr. Zeke? [sic:* Szuch?] Can you vote not guilty for count three and guilty for count five?

"All right. *Count three is the felonious assault and if you find that Mr. Prather threatened anybody with the pistol, even an unloaded pistol, the specific charge is second, but if you find he threatened him, a threat was made by anybody at that time and place, you could bring in a verdict of guilty there is you find those facts.*

"If you find him not guilty of count three, felonious assault, you must find him not guilty of possession of a firearm in the commission or attempt to commit a felony. So, if you find not guilty on three, count five, possession of a firearm in the commission of a felony, must be not guilty also as far as Mr. Prather is concerned.

"Any other questions?" (Emphasis added.)

Although this statement is somewhat unclear, it appears that the court *sua sponte* amended, the information by adding the other various members of the group as the "victims". Neither the defendant nor the prosecution had any objections to the court's supplemental instructions.

Failure to object to a trial court's instructions waives any claim of error unless this Court finds a miscarriage of justice. *People v Williams,* 114 Mich App 186; 318 NW2d 671 (1982). Further, as a general rule, the trial court may allow the amendment of an information at any time before, during, or after trial. Even if an objection is made and the trial court allows an amendment of the information, this Court will not reverse such a decision

unless it finds that the defendant was prejudiced in his defense or that a failure of justice resulted. MCL 767.76; MSA 28.1016; *People v Mahone,* 97 Mich App 192; 293 NW2d 618 (1980).

Applying the foregoing principles to the instant case, we conclude that defendant's argument is without merit. Testimony at trial revealed various accounts of Prather's actions with his gun. The trial court, in response to a specific question from the jury, allowed the felonious assault charge to apply to any one of the members of the group since the testimony at trial revealed that Prather's alleged assault could be construed to be directed toward more than one member of the group. Defense counsel failed to object to the additional instruction. Even if defense counsel had objected, it appears that the information could have been properly amended. See *People v Bruce,* 35 Mich App 358; 192 NW2d 634 (1971), *lv den* 387 Mich 788 (1972). The original information was sufficient to inform the defendant of the charge and the defendant does not appear to be prejudiced in his defense. The proffered defense was that the defendant was justified in his assaultive behavior, *i.e.,* self-defense. Under these circumstances, no miscarriage of justice occurred by the trial court's additional supplemental jury instructions.

Defendant's last claim of error is that his convictions are inconsistent with the convictions of his codefendant and, thus, defendant should have been acquitted. Codefendant Trusel was charged with second-degree murder, assault with intent to murder, and felony-firearm. Defendant was charged with felonious assault and felony-firearm. Trusel was convicted of two counts of felonious assault and felony-firearm. Defendant was convicted of felonious assault and felony-firearm. These are not

inconsistent verdicts. See *People v Vaughn,* 409 Mich 463; 295 NW2d 354 (1980).

Defendant argues that although Trusel shot and wounded Bazey and shot and killed Geist, the jury must have partially believed Trusel's claim of self-defense because it reduced Trusel's charge of second-degree murder and assault with intent to murder to the simple crimes of felonious assault. Yet, defendant states, with less proof the jury found the defendant guilty of felonious assault as charged. Defendant argues that the extenuating circumstances allowed to Trusel should have been allowed to him as well and, because the jury reduced the charges against Trusel, the jury should have acquitted him. We find that defendant has assumed that the jury determined that there were extenuating circumstances. The defendant speculates on how the jury reached its verdict and why it reduced the charges against Trusel. The fact remains that the elements of these crimes were proven beyond a reasonable doubt.

Affirmed.